LAW OFFICE OF MARK B. SCOTT, P.C.
Mark B. Scott (State Bar No. 49773)
11111 Santa Monica Boulevard, Suite 1840
Los Angeles, California 90025
Telephone:  (310) 552-3200
Facsimile:  (310) 552-3238

Attorney for Plaintiffs
R. Scott Turicchi and
Lannette C. Turicchi

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| R. SCOTT TURICCHI, an individual, and LANNETTE C. TURICCHI, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>RANDALL QUAID, an individual; EUGENIA QUAID, an individual; and FIDELITY NATIONAL TITLE INSURANCE COMPANY, a Florida corporation,<br><br>Defendants. | CASE NO.<br><br>COMPLAINT TO QUIET TITLE, FOR DECLARATORY AND INJUNCTIVE RELIEF, AND DAMAGES<br><br>DEMAND FOR JURY TRIAL |

180607Complaint.doc

COMPLAINT TO QUIET TITLE, FOR DECLARATORY AND INJUNCTIVE RELIEF, AND DAMAGES

Plaintiffs R. Scott Turicchi, an individual, and Lannette C. Turicchi, an individual, bring this action against defendants Randall Quaid, an individual, and Eugenia Quaid, an individual, to quiet title, and against those defendants and defendant Fidelity National Title Insurance Company, a Florida corporation, for declaratory and injunctive relief and damages, and allege as follows:

## JURISDICTION AND VENUE

1. Jurisdiction is founded on diversity of citizenship pursuant to 28 USC §1332, based upon the facts more specifically alleged in paragraphs 1 through 6 below. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

2. Venue lies in this District pursuant to 28 USC §1391, because the property which is the subject of the underlying action is located in this District, the actions alleged to have occurred took place principally within this District.

## THE PARTIES

3. Plaintiff R. Scott Turicchi ("Scott"), an individual, and Lannette C. Turicchi ("Lannette") an individual (collectively "Turicchis" or "plaintiffs") are domiciled in the State of California, and, at all times relevant hereto, maintain their principal residence in Los Angeles County, and an additional residence in Santa Barbara County.

4. Plaintiffs are informed and believe, and based upon such information and belief allege, that defendant Randall Quaid, an individual, is domiciled in the State of Vermont.

5. Plaintiffs are informed and believe, and based upon such information and belief allege, that defendant Eugenia Quaid, an individual, is domiciled in the State of Vermont.

6. Plaintiffs are informed and believe, and based upon such information and belief allege, that defendant Fidelity National Title Insurance Company ("Fidelity National") is a Florida corporation, domiciled in Florida, with its principal place of business in Jacksonville, Florida, and doing business in California.

///

## TERMS AND PHRASES

7. "Property," as used herein unless otherwise stated, shall refer to the residential property, situated in the County of Santa Barbara. State of California, Assessor's Parcel Number 011-050-54, commonly known as 1355 E. Mountain Drive, Santa Barbara, CA 93108. For ease of convenience, the Property is sometimes referred to as "the Residence."

8. "Turicchis," or "plaintiffs," as used herein unless otherwise stated, shall refer to R. Scott Turicchi, an individual, and Lannette C. Turicchi, an individual, the owners of the Property.

9. "Quaids," as used herein unless otherwise stated, shall refer to Randall Quaid and/or Eugenia Quaid, former owners of the Property.

10. "Company" or Fidelity National," as used herein unless otherwise stated, shall refer to defendant Fidelity National Title Insurance Company, Inc, a Florida corporation. Plaintiffs are informed and believe, and based upon such information and belief allege, that Fidelity National Title Insurance Company, Inc. is the successor to Lawyers Title Insurance Corporation, the issuer of the title insurance policy, insuring plaintiffs' title to the Property.

11. "Policy," as used herein unless otherwise stated, shall refer to Lawyers Title Insurance Corporation's Homeowner's Policy of Title Insurance, Policy No. 04101724, insuring plaintiffs' title to the Property.

12. "Quaids' Claims," as used herein unless otherwise stated, shall refer to the Quaids' claims that they are the owners of the Property, and that plaintiffs' Grant Deed is invalid.

13. "Insurance Claim," as used herein unless otherwise stated, shall refer to the insurance claim which plaintiffs tendered to the Company, on May 17, 2016, and supplemented, on May 18, 2016, in response to the Quaids' Claims, and demanding that the Company bring an action against the Quaids to quiet title to the Property.

14. "Rejection of Coverage Letter," as used herein unless otherwise stated, shall refer to the Company's June 8, 2016 letter, denying that the Company has a duty to defend and/or indemnify plaintiffs, with respect to the Quaids' Claims.

## BACKGROUND AND GENERAL ALLEGATIONS

15. On or about June 7, 2007, plaintiffs entered into a California Residential Purchase Agreement and Joint Escrow Instructions to purchase from Bruce Berman and Nancy Goliger Berman a four-bedroom, six-bathroom residence, with garage, guest house, and a pool ("the Property"), located in Santa Barbara, California. Thereafter, escrow was opened, and plaintiffs obtained a preliminary title report, which stated that fee title was held by Bruce Berman and Nancy Goliger Berman, as Trustees under Declaration of Trust dated May 18, 1993 ("the 1993 Bruce and Nancy Berman Living Trust"). For ease of convenience, Bruce Berman and Nancy Goliger Berman and the 1993 Bruce and Nancy Berman Living Trust are referred to collectively as "Grantor."

16. On August 21, 2007, in reliance on the preliminary title report and the Policy which would insure plaintiffs' title to the Property, plaintiffs closed escrow. A true and correct certified copy of the Grantor's Grant Deed to plaintiffs is attached hereto as Exhibit A, and is incorporated by reference. On the same date that escrow closed, the Company issued the Policy, insuring plaintiffs' title against actual loss resulting from covered risks enumerated in the Policy. A true and correct copy of the Policy is attached hereto as Exhibit B, and is incorporated by reference.

17. Shortly after escrow closed, plaintiffs moved to the Property. In 2013 and 2014, plaintiffs undertook improvements to the Property, including adding a fourth bedroom and bathroom, a new pool, a new garage, and a driveway. The cost of the improvements was approximately $2,000,000, bringing their total investment in the Property to $7,300,000.

18. On or about April 27, 2016, plaintiffs' mortgage lender, from whom plaintiffs had obtained a $1.5 million loan, secured by the Property, informed plaintiffs that the Quaids had written to the lender that the Quaids own the Property, that the Grantor had no right to sell the Property, that plaintiffs' title was not valid, and that the $1.5 million loan was a fraudulent loan.

19. After obtaining the information from the mortgage lender, plaintiffs learned from Internet research that the Quaids had been and were continuing to assert their ownership of the Property, and that plaintiffs did not own the Property, and posted their assertions on the internet,

using Twitter, videos, YouTube, and Facebook. Plaintiffs requested the social media to remove the postings, but the social media would not remove them.

20. On May 17, 2016, at 3:44 PM, Lannette emailed an insurance claim to the Company, asking the Company to bring an action to defend plaintiffs' title against the Quaids ("the Insurance Claim"). In the Insurance Claim, Lannette informed the Company of the Quaids' Claims, including that the Quaids told plaintiffs' mortgage lender that plaintiffs' title was invalid because the Quaids were the legal owners of the Property, and that the Quaids had been and were continuing to use the Internet to disseminate to the public their assertion of ownership of the Property. In the Insurance Claim, Lannette asked the Company to contact her regarding how it would defend her title against the Quaids' Claim. A true and correct copy of the Insurance Claim, made in Lannette's May 17, 2016 email, sent at 3:44 PM, is attached hereto as Exhibit C, and is incorporated by reference.

21. On May 18, 2016, at 10:49 PM, the Company's Claims Department in Omaha, Nebraska, emailed to Lannette a letter response to the Insurance Claim, acknowledging receipt of the Insurance Claim, and notifying her that the Insurance Claim was assigned for investigation and administration to Roger Shiffermiller ("Shiffermiller"), the Company's Vice President and Senior Claims Counsel, in Omaha, Nebraska. In addition, the letter stated that the purpose of the investigation was to obtain a complete understanding of the facts and circumstances that formed the basis of the Insurance Claim, that a Company representative might contact her for additional information, and that she should forward any information or relevant documentation to Shiffermiller.

22. On May 18, 2016, at 10:52 PM, as requested by the Company's Claim Department, Lannette supplemented the Insurance Claim, by sending Shiffermiller an email, which provided a narrative and documents pertaining to the Quaids' Claims, including their disparagement of plaintiffs, plaintiffs' title to the Property, and, the serious potential implications of the Quaids' Claims on R. Scott Turicchi, as an officer of a public company. In the email, Lannette reiterated that she was giving notice under the Policy of the Quaids' Claim, and that she expected the Company to defend her title. She concluded the email with the statement: "I have a significant financial investment in

1  this property, and I expect it to be defended." For ease of convenience, Lannette's May 17, 2016

2  email, and May 18, 2016 email are sometimes collectively referred to as "the Insurance Claim."

3      23.    On May 18, 2016, at 12:03 PM, Shiffermiller sent an email to Lannette, stating that the

4  Insurance Claim was assigned to him for investigation and administration, and requesting copies of

5  any documents evidencing someone's claim of ownership of the Property.

6      24.    On June 8, 2016, at 2:40 PM, Shiffermiller emailed to Lannette the Company's

7  Rejection of Coverage Letter. A true and correct copy of the Company's Rejection of Coverage

8  Letter is attached hereto as <u>Exhibit D</u>, and is incorporated by reference.

9      25.    In the Rejection of Coverage Letter, Shiffermiller stated from the facts which Lannette

10 provided in the Insurance Claim, the following five facts:

> The Property was previously owned by Randall and Eugenia
> Quaid. By deed recorded January 15, 1992, the Quaids conveyed
> the Property to Grantor. The Quaids have publicly claimed that
> they did not covey the Property to Grantor and asserted that they
> are the owners of the Property. On April 10, 2016, the Quaids sent
> a letter to your lender stating that they own the Property. They
> have also made this claim on the internet.

    26.    Shiffermiller next stated that the Company was denying coverage, as follows:

> Although the Quaids have publicly asserted that they own the
> Property, *they have taken no formal action to challenge your title
> to the Property. As such, there is no present challenge to title and
> no action is required under the Policy.* The Company recognizes,
> however, that it may have an obligation to resolve a challenge to
> title as insured if the Quaids take action, by initiation or otherwise,
> to challenge the validity of your title to the Property. (emphasis
> added)

## COUNT ONE FOR QUIET TITLE AGAINST THE QUAID DEFENDANTS

    27.    Plaintiffs re-allege and incorporate by reference, each and every allegation contained in paragraph 1 through 25.

    28.    Plaintiffs are owners of fee simple title to the Property, as follows:

> All that certain real property situated in the County of Santa
> Barbara, State of California, described as follows:

180607Complaint.doc    6

COMPLAINT TO QUIET TITLE, FOR DECLARATORY AND INJUNCTIVE RELIEF, AND DAMAGES

> Parcel "A" of Parcel Map No. 11669 in the County of Sana Barbara, State of California, as shown on the map filed in Book 11, Page 30 of Parcel Maps, in the office of the County Recorder of said County
>
> Commonly known as: 1355 East Mountain Drive, Santa Barbara, CA 93108
>
> Assessor's Parcel Number: 011-050-54

29. The basis of plaintiffs' title is the Grant Deed granting the Property in fee simple to plaintiffs, dated July 6, 2007, and recorded in the Official Records of Santa Barbara County, 2007-0060403, on August 21, 2007.

30. Plaintiffs were seized and possessed of the Property within five years of the commencement of this action.

31. Plaintiffs are informed and believe, and based upon such information and belief allege, that the Quaids claim an interest adverse to plaintiffs in the Property, i.e., that they are former owners of the Property, who claim that the Grant Deed to plaintiffs' Grantor was executed two months prior to the closing of the Grantor's escrow, in 1992, that the Quaids' signatures on the Grant Deed to plaintiffs' Grantor were forged, and that the Quaids had no knowledge that the Property had been sold out from under them.

32. Plaintiffs are seeking to quiet title against the Quaids' Claims that they are the owners of the Property. The Quaids' Claims are without any right whatsoever, and the Quaids have no right, title, estate, lien, or interests, whatever in the above-described Property or any part.

33. Plaintiffs seek to quiet title as of the June 7, 2018.

## COUNT TWO FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF AGAINST THE QUAIDS AND THE COMPANY

34. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 32.

35. On August 21, 2007, the Company issued the Policy, insuring plaintiffs against actual loss, including any costs, attorney's fees and expenses provided under the Policy resulting from the Covered Risks set forth in the Policy. The Policy, attached hereto as Exhibit B, and incorporated by reference, includes an Owner's Coverage Statement, Covered Risks, and Conditions for making a claim, and the Company's choices when it learns of a claim. Those Policy sections provide, in in pertinent part, as follows:

### OWNER'S COVERAGE STATEMENT

This Policy insures You against actual loss, including any costs, attorneys' fees and expenses provided under the Policy, resulting from the Covered Risks set forth below, if the Land is an improved residential lot on which there is located a one-to-four family residence and each insured named in Schedule A is a Natural Person.

### COVERED RISKS

The Covered Risks are:
1. *Someone else owns an interest in Your Title.*
. . .
3. *Someone else claims to have rights affecting Your Title arising out of forgery or impersonation.*
. . .
6. *Your title is defective.*
7. Any of Covered Risks 1 through 6 occurring after the Policy Date.
. . .
10. *Someone else claims to have rights affecting Your Title arising out of fraud*, duress, incompetency or incapacity.
. . .
26. *Your Title is unmarketable*, which allows someone else to refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it.
27. A document upon which Your Title is based is invalid because it was not properly signed, sealed, acknowledged, delivered or recorded. . . . .
. . . .

Policy, page 2. (emphasis added)

### CONDITIONS

. . .

**3. HOW TO MAKE A CLAIM.**
a. Prompt Notice of Your Claim.

180607Complaint.doc                        8
COMPLAINT TO QUIET TITLE, FOR DECLARATORY AND INJUNCTIVE RELIEF, AND DAMAGES

> (1) As soon as You Know of anything that might be covered by this Policy, You must notify Us promptly in writing.
> (2) Send Your notice to Lawyers Title Insurance Corporation. . . . and state where the Land is located. Please enclose a copy of Your Policy, if available.
> (3) If You do not give Us prompt notice, Your coverage will be reduced or ended, but only toff the extent Your failure affects our ability to resolve the claim or defend you.
>
> **4. OUR CHOICES WHEN WE LEARN OF A CLAIM.**
> a. After we receive Your notice or otherwise learn of a claim that is covered by this Policy, Our choices include one or more of the following:
> (1) Pay the claim.
> (2) Negotiate a settlement.
> (3) *Bring* or defend a legal action related to the claim.
> (4) Pay You the amount required by this Policy.
> (5) End the coverage of this Policy for the claim by paying You Your actual loss resulting from the Covered Risk, and those costs, attorneys' fees and expenses incurred up to the time which We are obligated to pay.
> . . . .

Policy, page 3. (emphasis added)

36. Plaintiffs are informed and believe, and based upon such information and belief allege, that there now exist certain controversies and disputes among plaintiffs, Quaids, and the Company, in that <u>plaintiffs contend</u> that:

> 36.1 Plaintiffs are the owners of the Property, and dispute the Quaids' Claims that the Quaids are the owners of the fee title interest in the Property, have the sole ownership rights in the Property, that plaintiffs' Grant Deed was the result of forgery, impersonation, and/or fraud, and that the Grant Deed conveying title to plaintiffs was not properly signed, sealed, acknowledged, delivered, and recorded;
>
> 36.2 Because of the Quaids' Claims, the Property is unmarketable;
>
> 36.3 The Quaids' Claims are Covered Risks, under the Policy, and the Company was required to bring a quiet title action on behalf of

plaintiffs against the Quaids, incurring the necessary expenses, including costs and attorney fees to prosecute the quiet title action on behalf of plaintiffs;

36.4 The occurrence forming the basis of plaintiffs' Insurance Claim was a Covered Risk within the basic scope of the Policy's insurance coverage, and, therefore, potentially covered under the Policy, resulting in the Company's duty to defend plaintiffs' title, by prosecuting a quiet title action against the Quaids;'

36.5 The occurrence forming the basis of plaintiffs' Insurance Claim was a Covered Risk within the basic scope of the Policy's insurance coverage, thus, shifting the burden to the Company to prove that the Insurance Claim was not a Covered Risk, and/or specifically excluded from coverage, which the Company cannot do;

36.6 The Company failed to make an adequate investigation of the facts pertaining to the Insurance Claim, and its failure to do so bars the Company's denial of plaintiffs' tendered defense, and subjects the Company to liability for plaintiffs' attorney fees and costs in prosecuting their quiet title action against the Quaids;

36.7 The Company's Rejection of Coverage Letter constituted a wrongful denial of plaintiffs' Insurance Claim, resulting in the Company's giving up the right to prosecute plaintiffs' quiet title action against the Quaids, and/or to control plaintiffs' prosecution of the quiet title action, including to use its own attorneys to represent plaintiffs in the quiet title action;

36.8 The Company's Rejection of Coverage Letter because the Quaids did not file a lawsuit against plaintiffs was a wrongful denial of its

obligation to bring a quiet title action against the Quaids, under the express language of the Policy;

36.9 The Company's Rejection of Coverage Letter did not state any Policy provision(s) under which plaintiffs' Insurance Claim to prosecute an action against the Quaids was not a Covered Risk, or specifically excluded under the Policy;

36.10 Because the Company denied coverage in the Company's Rejection of Coverage Letter, plaintiffs are entitled undertake their own quiet title action against the Quaids, and recover from the Company the expenses of litigation against the Quaids, including plaintiffs' costs and attorneys' fees;

36.11 Because the Company denied coverage in the Company's Rejection of Coverage Letter, the Company has no right to interfere with plaintiffs' prosecution and control of the quiet title action against the Quaids;

36.12 Because the Company denied coverage in its Company's Rejection of Coverage Letter, the Company has waived any right under the Policy to object to the Quaids' Claims not being Covered Risks under the Policy, and plaintiffs are entitled to recover from the Company the expenses of prosecuting their quiet title action against the Quaids, including costs, and attorneys' fees;

36.13 Because the Company denied coverage in the Company's Rejection of Coverage Letter, the Company is estopped from asserting any right under the Policy to object to the Quaids' Claims as Covered Risks under the Policy, to object to plaintiffs engaging their own attorney to prosecute a quiet title action against the Quaids, and the Company is estopped from objecting to plaintiffs

                recovering from the Company the expenses of prosecuting their quiet title action to quiet title against the Quaids, including costs, and attorneys' fees;

    36.14  Because the Company denied coverage in the Company's Rejection of Coverage Letter, the Company is barred under the doctrine of equitable tolling from objecting to the Insurance Claim; and

    36.15  Because the Company denied coverage in the Company's Rejection Letter, in the event plaintiffs lose the quiet title claim against the Quaids, the Company is estopped from disputing that it is obligated to indemnify plaintiffs for their actual loss, with respect to the Property, including plaintiffs' attorney fees, costs, and other expenses incurred to prosecute the quiet title action against the Quaids.

37. Plaintiffs are informed and believe, and based upon such information and belief allege, that the Quaids deny each of plaintiffs' contentions in paragraph 36.1, that they are the owners of the Property, and plaintiffs are without sufficient information and belief regarding whether the Quaids dispute plaintiffs' contentions in paragraphs 36.2 through 36.15.

38. Plaintiffs are informed and believe, and based upon such information and belief allege, that the Company denies and disputes each of plaintiffs' contentions in paragraphs 36.1 through 36.15, and further deny that that the Quaids' Claims have made the Property unmarketable.

39. Therefore, an actual controversy among the parties has arisen and now exists, relating to the Quaids' Claims and the Insurance Claim.

40. Plaintiffs have sustained great and irreparable injury, and will continue to sustain such great and irreparable injury as a result of the Quaids' Claims, and the Company's denial of the duty to defend and/or indemnify in the Company's Rejection of Coverage Letter, thus, requiring plaintiffs to bring their own quiet title action against the Quaids.

41. If plaintiffs are not permitted to continue to have the benefits of the ownership of the Property, and the Policy benefits, it will be extremely difficult or impossible to ascertain the exact amount of damages that they will suffer or sustain by reason of the Quaids' and the Company's actions. Unless the Quaids are enjoined from interfering with plaintiffs' title to the Property, and unless the Company is enjoined from interfering with plaintiffs' prosecution of the quiet title action, plaintiffs will continue to suffer great and irreparable injury. For all of these reasons, pecuniary compensation will not afford plaintiffs adequate relief, and, plaintiffs, therefore, are without an adequate remedy at law.

42. Plaintiffs request a declaration of the rights and obligations of the parties, and a preliminary injunction and a permanent injunction.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment against defendants and each of them as follows:

### Count I and Count II

1. That this Court issue a judgment declaring that plaintiffs are the owners in fee simple of the Property, and that the Quaids have no interest in the Property adverse to plaintiffs.

2. That this Court issue a judgment declaring the rights and obligations of the parties herein;

3. That this Court issue a preliminary injunction and a permanent injunction against the Quaids and the Company, and each of them, to prevent plaintiffs from suffering and continuing to suffer great and irreparable injury;

4. For damages resulting from the loss of plaintiffs' rights under the Policy, including but not limited to the right to expenses, including attorney's fees and costs;

5. For interest at the legal rate;

6. For reasonable attorney fees;

180607Complaint.doc 13
COMPLAINT TO QUIET TITLE, FOR DECLARATORY AND INJUNCTIVE RELIEF, AND DAMAGES

7. For costs of suit herein incurred; and

8. For such other and further relief as the court may deem proper.

DATED: June 7, 2018  LAW OFFICE OF MARK B. SCOTT, P.C.


By /s/ Mark B. Scott
Mark B. Scott
Attorney for Plaintiffs


## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial of all the issues raised by the Complaint.


LAW OFFICE OF MARK B. SCOTT, P.C.


By /s/ Mark B. Scott
Mark B. Scott
Attorney for Plaintiffs

## VERIFICATION

I, Lannette C. Turicchi, am one of the plaintiffs in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of June, 2018 at Pasadena, California.

_____
LANNETTE C. TURICCHI